Estate of James Hogan, deceased, James E. Hogan and Peoples-Pittsburgh Trust Company, Executors v. Commissioner.
Estate of Hogan v. Commissioner
Docket No. 366.
United States Tax Court
1944 Tax Ct. Memo LEXIS 295; 3 T.C.M. (CCH) 315; T.C.M. (RIA) 44109; April 6, 1944
*295 Estate tax: Stock in close corporation: Valuation based on worth of physical assets. - Shares of stock held by decedent in a close corporation engaged in a highly competitive business are valued on the basis of the worth of the physical assets. J. Frank McKenna, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This is a proceeding for redetermination of a deficiency in estate tax in the amount of $2,374.72. The only question for decision is the fair market value for estate tax purposes of 10 shares of the capital stock of the Model Coat & Apron Supply Co., of Pittsburgh, owned by the decedent at the time of his death. Findings of Fact The petitioner, James E. Hogan and Peoples-Pittsburgh Trust Co., are the executors of the estate of James Hogan, who died a resident of Pittsburgh, Pa., on May 26, 1940. The estate tax return was filed with the collector of internal revenue at Pittsburgh. The decedent at the date of his death was the owner of 10 shares out of 80 shares outstanding of the Model Coat & Apron Supply Co., of Pittsburgh. This is a corporation engaged in renting and leasing coats, aprons, *296 gowns, towels, and industrial uniforms which it launders and keeps in repair. It was organized in 1909. It operates eight supply routes. Decedent's brother is a principal stockholder and officer of the company. The operations of the company have been profitable. The net income after deduction for taxes, the dividends paid, and the dividends paid per share for the period 1934 to 1940 were as follows: Net income
after deduc-
Dividends
Dividends
Year
tion for taxes
Paid
Per Share
1934
$22,546.87
$16,000 $200
1935
16,476.68
24,000
300
1936
16,287.89
18,000
225
1937
13,574.97
14,000
175
1938
15,375.93
16,000
200
1939
14,438.22
10,000
125
1940
14,603.45
10,000
125
The shares of stock of the company are closely held. There have never been any sales of the stock except in 1943 when 10 shares were sold at a price of $1,000 per share. The company is required to file an annual capital stock tax return with the Commonwealth of Pennsylvania for the purpose of the assessment of capital stock tax. For many years prior to 1939 the company reported its shares of stock at their book value. The state authorities, however, always determined the value to *297 be $1,875 per share, or $150,000 for the 80 shares, and the company paid the franchise tax based upon that valuation. By reason of this action by the state authorities the company reported the shares at a value of $1,875 per share in its capital stock tax returns for 1939 and 1940. One of the executors of the decedent's estate, the Peoples-Pittsburgh Trust Co., wanted to sell the shares shortly after the death of the decedent; for its considered that they were not a good asset for the estate to hold. The other executor refused to consider the sale of the shares at less than $2,000 per share. They were offered for sale by the estate at that price but none were sold. The book value of the shares was $1,438.31 at December 31, 1939, and $1,479.62 at December 31, 1940. In the estate tax return the 10 shares of stock in question were returned at a value of $1,125 per share. In the determination of the deficiency the respondent valued them at $2,100 per share. The fair market value of the shares at the date of decedent's death was $1,459 per share. Opinion The only question for our determination is the fair market value of the 10 shares of stock of the Model Coat & Apron Supply Co. *298 which decedent owned at the time of his death. In the estate tax return the executors reported the stock at a value of $1,125 per share. The respondent determined in his deficiency notice that it had a value of $2,100 per share. We think that the actual fair market value of the shares at the date of decedent's death lay somewhere between these valuations. Respondent's valuation is not supported by any of the evidence of record unless it should result from some computation not shown by the evidence based upon the earnings or dividends. The executors used a hybrid method based partly upon earnings, partly upon dividends, and partly upon book value. The result which would be obtained here by application of approved formulae based upon earnings or dividends would probably represent too high a value for the stock of a corporation like this one. It is a close corporation engaged in a highly competitive business. The evidence is that the stock was not considered desirable for investment purposes. The 10 shares which decedent owned were offered for sale at $2,000 per share but none were ever sold. The only sales of record took place three years later in 1943 at $1,000 per share. One of petitioner's *299 witnesses testified, however, that this sale followed a "downtrend in things." We think that the book value represented the approximate fair market value of the shares at the date of decedent's death. One of petitioner's witnesses testified that the book value was based upon the physical assets of the business. We think that whatever additional value might be attributed to good will would be offset by the hazards of the business and other undesirable features, from an investment standpoint. Accordingly we have determined that the fair market value of the shares at date of decedent's death is approximately the average of the fair market values at December 31, 1939, and December 31, 1940, namely, $1,459 per share. Decision will be entered under Rule 50.